DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court judgment re-sentencing Paul T. Willey, defendant below and appellant herein, for his conviction on two counts of forgery in violation of R.C. 2913.31. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.14(E)(4) AND R.C.2929.19(B)(2)(c) WHEN ORDERING MR. WILLEY TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION."
SECOND ASSIGNMENT OF ERROR:
"THE RECORD IS DEVOID OF EVIDENCE SUPPORTING THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES, IN VIOLATION OF MR. WILLEY'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION."
 {¶ 2} This case involves a crime spree that began in Guernsey County and ended in Washington County. A brief summary of the facts pertinent to those events, as well as the procedural posture of the case, is as follows.
 {¶ 3} On December 29, 2000, appellant and three other people drove a stolen Ford Tempo from Cambridge to Beverly where they stopped at the Citizens Bank drive through and cashed a $45 forged check drawn on the account of Randy Anderson. The group then drove to the Lakeside Motel, located on State Route 60, and rented a room. When they checked-in appellant represented himself as Randy Anderson and paid for the room with another forged check drawn on Anderson's account.
 {¶ 4} Afterwards, the group drove to the Marietta Ames Department Store where they purchased in excess of $700 in merchandise. This time they paid with a forged check drawn on the account of William and Dawn Dailey.[1] The Ames store manager became suspicious of the group and followed them into the parking lot. The manager recorded the vehicle's license number and gave the information to the police. Subsequently, the authorities arrested appellant. He readily admitted his involvement with these offenses and others that occurred in Guernsey County.
 {¶ 5} On April 11, 2001, the Washington County Grand Jury returned an indictment charging appellant with three counts of forgery in violation of R.C. 2913.31(A)(3). Appellant pled not guilty to these charges.[2] The parties reached an agreement whereby appellant would plead guilty on two counts in exchange for having the sentences run concurrently to one another. The matter came on for hearing on September 17, 2001 and the trial court explained to appellant his constitutional rights and endeavored to ascertain that his plea was knowingly and voluntarily made. Satisfied that this was the case, and after a review of the nature of the charges against appellant as well as the specifics of the plea bargain, the court accepted appellant's guilty pleas and passed the matter for pre-sentence investigation.
 {¶ 6} On October 31, 2001, the trial court (1) sentenced appellant to a one year prison term for both offenses, and (2) ordered that the sentences be served consecutively. Appellant objected to imposition of consecutive sentences, citing the previous plea bargain, but the trial court responded that the agreement was reached, and the plea accepted, before the court had seen the pre-sentence investigation report and learned of appellant's "extensive" criminal background. The court nevertheless offered to let appellant "withdraw" his plea and "go back to trial," but appellant declined. The trial court issued its final judgment on November 7, 2001.
 {¶ 7} On appeal, we reversed the judgment on grounds that the trial court did not make sufficient findings on the record to support imposition of consecutive sentences. See State v. Willey, Washington App. No. 01CA37, 2002-Ohio-2848. We remanded the matter for further proceedings, and on October 25, 2002, the trial court conducted a second sentencing hearing. Once more, the trial court expressed concern over appellant's lengthy juvenile and adult criminal record as well as the failure of past community control sanctions to rehabilitate him. Once again, the trial court ordered the sentences to be served consecutively. This appeal followed.
 I {¶ 8} Appellant argues in his first assignment of error that the trial court did not consider the proper statutory criteria for imposing consecutive sentences. We disagree.
 {¶ 9} Our analysis begins with R.C. 2929.14(E)(4) which provides, in pertinent part:
"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 10} This statute sets out a "tri-partite procedure" for imposing consecutive prison sentences: first, the trial court must find that consecutive sentences are "necessary" to protect the public or to punish the offender; second, the court must find that the proposed consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" that the offender poses; and third, the court must find the existence of one of the three circumstances set out in sub-parts (a) through (c). State v. Lovely
(Mar. 21, 2001), Scioto App. No. 00CA2721, unreported; State v. Haugh
(Jan. 24, 2000), Washington App. No. 99CA28, unreported. The trial court must also make a finding that gives its reasons for imposing consecutive sentences. R.C. 2929.19(B)(2)(c). We note that the following portion of the trial court's November 1, 2002 sentencing entry provides:
"The Court FINDS that consecutive sentences are necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offenders conduct and to the danger he poses to the public and the Court also FINDS that the offender's history or criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. The offender has a significant criminal history that demonstrates that the courts have not been able to rehabilitate him. Many of his crimes were committed when he was already under probation or some other sanction. The defendant has been given many opportunities to improve his behavior in the past and continues to commit crimes. The current crimes are part of a crime spree that the defendant has committed over several jurisdictions. Some of the past crimes were committed right after each other, even after being place on probation for the previous crimes. Even though the defendant has been through many programs, he still continues to commit crimes. These sentences are not disproportionate to seriousness of his conduct and the danger the defendant poses to the public since he continues to commit crimes."
 {¶ 11} It is clear from the foregoing that the trial court followed the proper statutory procedure, and considered the appropriate statutory criteria, before it imposed consecutive sentences. Appellant argues that the trial court should not be permitted to merely "recite" the statutory language without fully discussing the factors that played a part in its decision. We disagree with appellant's underlying premise that in the case sub judice the trial court's discussion was a mere recitation of the statute's language. Indeed, as the above cited portion of the judgment reveals, the trial court went into detail to explain why it believed that consecutive sentences are necessary to protect the public. This is also evident in the transcript of the October 25, 2002 hearing. The trial court was concerned with appellant's lengthy criminal history (both as an adult and as a juvenile) and his repeated inability to rehabilitate. As the court cogently noted, as long as appellant was "sitting behind bars," he could not commit any more criminal offenses.
 {¶ 12} Appellant objects to what he suggests was the court's myopic focus on his extensive criminal record. Appellant argues that his record alone cannot be the reason for imposing consecutive sentences and that the court should also have considered whether consecutive sentences were disproportionate to his conduct in this case.
 {¶ 13} We believe the court did just that. Indeed, the above cited portion of the October 25, 2002 judgment expressly states that an important factor to the court was that the offenses at issue were committed as part of a multi-jurisdictional crime spree. We agree with the trial court that this shows that appellant's conduct was not an isolated incident of poor judgment, but rather is indicative of a complete disregard for the law — a disregard which he apparently has held for most of his life.
 {¶ 14} For these reasons, we find that the trial court sufficiently complied with both R.C. 2929.14(E)(4) and R.C.2929.19(B)(2)(c). Thus, appellant's first assignment of error is without merit and is hereby overruled.
 II {¶ 15} Appellant argues in his second assignment of error that the evidence does not support the court's finding that consecutive sentences were proportionate to the seriousness of the offense or necessary to protect the public. In particular, appellant contends that the forgeries at issue only totaled "$738.23" and that appellant has been ordered to serve a sentence which, in effect, "mirrors a sentence for robbery." We are not persuaded.
 {¶ 16} We believe that appellant's argument fails to appreciate that the crimes for which he was convicted were committed as part of a multi-jurisdiction crime spree. While the single amounts may not have been significant, the circumstances under which they occurred are significant. Appellant and his friends stole a car, forged several checks and would have, undoubtedly, continued along their way had they not been apprehended by the authorities. Viewing the totality of the circumstances in this case, we find sufficient evidence in the record to support the trial court's conclusion that consecutive sentences were not disproportionate to the seriousness of this offense.
 {¶ 17} Appellant also contends that the court erroneously stated that appellant had not been rehabilitated during his previous stints in prison. He refers to his own comments at the October 25, 2002 hearing in which he remarked that he was "tired already" of sitting behind bars. Appellant essentially argues that his comments show that prison had a deleterious effect on him before and, thus, is not needed now. We disagree with appellant's reasoning.
 {¶ 18} The Pre-Sentence Investigation Report (PSI) bears out the trial court's findings that appellant has both an extensive juvenile and an extensive adult record. At the time of the re-sentencing hearing, appellant was twenty-one (21) years old. He had already amassed a record that included arson (1994), criminal trespass (1995), receiving stolen property (1995), theft (1997), vandalism (1997), grand theft (1997), petty theft (2000), theft (2000), forgery (2000) and numerous traffic and probation violations.[3] Appellant's PSI further reveals that he has been incarcerated in both juvenile and adult facilities. Obviously, appellant has not been rehabilitated.
 {¶ 19} As the trial court cogently observed, incarcerating this young man seems to be the only way to keep him from committing additional crimes. If he is truly "tired" of prison, perhaps this experience may be the catalyst to change his behavior. In any event, we find sufficient evidence in the record to support the trial court's findings that consecutive sentences are not disproportionate to the seriousness of the offenses in this case and are necessary to protect the public. Consequently, we hereby overrule appellant's second assignment of error.
 {¶ 20} Having reviewed all the errors assigned and argued in the briefs, and finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] The check was apparently signed by one of the other people in the group who presented herself as Dawn Daily. The instrument was apparently filled out by the appellant.
[2] Appellant initially pled guilty to these charges, against the advice of his counsel, but was then allowed to withdraw his pleas later in the hearing.
[3] We emphasize that these are only some of the offenses in appellant's long and ignoble career. We have omitted many others simply for the sake of brevity.